# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| HARVEY EUGENE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-CV-01820-JAR |
| | ) | |
| ANDREW SAUL, Commissioner, | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Harvey Eugene Johnson's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*.

## I.    Background

Plaintiff applied for disability insurance benefits on December 21, 2015, alleging disability as of January 30, 2015,[2] due a compression fracture of his thoracic spine, osteoporosis, and arthritic arms and knees.  After his application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ").  On January 18, 2018, the ALJ held a hearing, at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified.  At the hearing, Plaintiff's counsel requested that the ALJ order a supplemental

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor, Acting Commissioner Nancy A. Berryhill. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] At the hearing before the ALJ, Plaintiff's counsel amended Plaintiff's onset date of disability to December 14, 2015.

consultative examination of Plaintiff following the results of his bone density scan. The ALJ denied the request because Plaintiff had already undergone an orthopedic consultative examination with Alan Morris, M.D, on February 16, 2016, and was not asserting any new impairments since that examination.

The ALJ issued a written decision on May 1, 2018, denying Plaintiff's application. Plaintiff's request for review by the Appeals Council was denied on September 10, 2018. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II.    Facts

The Court adopts Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 16) to the extent they are admitted by the Commissioner. (Doc. No. 27-1). The Court also adopts Defendant's Statement of Additional Material Facts. (Doc. No. 21-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III.   Standards

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. Chismarich v. Berryhill, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. Chaney v. Colvin, 812 F.3d 672, 676 (8th Cir. 2016). A reviewing court must consider evidence that both supports and detracts from the ALJ's

decision.  Id.  If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the decision of the Commissioner.  Id.  In other words, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  Papesh v. Colvin, 786 F.3d 1126, 1131 (8th Cir. 2015).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.  The Court defers heavily to the findings and conclusions of the Social Security Administration.  Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00;

20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV.     Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of mid-thoracic compression fracture and degenerative disc disease. The ALJ held that the allegation as to arthritic arms and knees was dismissed because the objective medical record was devoid of evidence that would corroborate

this impairment. Similarly, the ALJ determined that "[a] severe impairment is not found for [Plaintiff's] osteoporosis because the medical record does not associate any significant work-related limitation with it." (Tr. 13).

After considering the entire record, the ALJ determined that Plaintiff has the RFC to perform medium work, except that he could never climb ladders, ropes, or scaffolds; could occasionally climb stairs or ramps; and could frequently balance, stoop, kneel, crouch, and crawl. The ALJ further found that Plaintiff has been able to perform his past relevant work since December 14, 2015, including his past work as a valve assembler. Moreover, the ALJ determined that Plaintiff would not be found disabled even it if were assumed he could not perform his past relevant work because he could perform other work existing in significant numbers in the national economy, including medium work as a laundry worker, machine washer, and binder-and-wrapper packer. Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 15).

### V.    Discussion

It is appropriate for the ALJ to take a "functional approach" when determining whether impairments amount to a disability. Stormo v. Barnhart, 377 F.3d 801, 807 (8th Cir. 2004) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)). "That a claimant has medically-documented impairments does not perforce result in a finding of disability." Id. (citation omitted). The ALJ should consider "all the evidence in the record" in determining RFC, including "the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (citation omitted). If, in light of all the evidence, "the impairments are not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." Bowen, 482 U.S. at 146.

Because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010); Hutsell, 259 F.3d at 711-12. However, the burden to prove the claimant's RFC rests with the claimant, not the Commissioner. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).

In his appeal of the ALJ's decision, Plaintiff raises three arguments: (1) the ALJ failed to fully develop the record; (2) the ALJ erred in finding that his osteoporosis was not a severe impairment; and (3) the ALJ erred by relying on inaccurate testimony from the vocational expert ("VE").

### Developing the record

Plaintiff first argues the ALJ failed to fully develop the record by ordering an updated consultative examination ("CE") to review the evidence and provide a medical opinion addressing Plaintiff's ability to function in the workplace, especially in light of new evidence of osteoporosis. Plaintiff contends that the results of a May 16, 2016 bone density scan were not considered by Dr. Morris when he performed his CE of Plaintiff on February 17, 2016.

The medical record reflects that in his February 2016 CE report, Dr. Morris noted he had reviewed Plaintiff's medical records, but no imaging studies had been provided, despite Plaintiff's assertion that he had undergone x-rays the month prior. Dr. Morris noted that Plaintiff's "speech is good, he appears reliable." (Tr. 280). Then, Dr. Morris noted that Plaintiff "has a very exaggerated gait, tending to lurch from one side to the other at times, limping on the right leg." (*Id.*). Dr. Morris later opined that "[o]verall, [Plaintiff] exhibits rather significant exaggeration of movements during physical examination." (*Id.*). Dr. Morris's clinical impressions were healed

compression fracture of the midthoracic spine and right knee arthralgia with negative x-rays. Dr. Morris does not mention Plaintiff's diagnosis of osteoporosis.

On May 2, 2016, Plaintiff's primary care physician, Howard Kohn, M.D., ordered a bone density scan and opined that he would begin treatment "depending on [its] findings." (Tr. 322). On May 16, 2016, Plaintiff underwent the scan, which concluded that "there is a significant increased risk of fracture." (Tr. 332). Then, on October 10, 2016, Dr. Kohn limited Plaintiff to "just weightbearing activity," although the meaning of the note is unclear. (Tr. 305). Throughout his treatment notes, Dr. Kohn documents Plaintiff's low back pain, particularly when lifting, as well as a normal gait.

ALJs have a duty to fully and fairly develop the record. Kathcart v. Saul, No. 4:19-CV-641 RWS, 2020 WL 1433637, at *2–3 (E.D. Mo. Mar. 24, 2020) (citing Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005)). Failure to do so is reversible error, but reversal is only warranted where the failure resulted in unfairness or prejudice to the plaintiff. Id. (citing Combs v. Astrue, 243 Fed. Appx. 200, 204 (8th Cir. 2007)). Additionally, although the duty to develop the record may require the ALJ to seek additional medical records, they do not need to seek additional information unless a crucial issue is undeveloped. Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004). So long as other evidence in the record provides a sufficient basis for their decision, the ALJ does not need to seek additional evidence. Martise v. Astrue, 641 F.3d 909, 926–27 (8th Cir.2011) (internal citations and quotations omitted) ("[T]he ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995).

Here, there was sufficient evidence to support the ALJ's decision. The medical record shows a healed compression fracture  and normal knees and examinations showing normal gait

and equal strength in the extremities. (Tr. 282-85, 295, 319). Changes to the spine, including lumbar facet arthritis, and arthritic and degenerative changes, were mild. (Tr. 263, 271, 334). Plaintiff also reported only mild or moderate pain during his examinations. (Tr. 292, 302-03, 310, 319, 322, 324, 330). Conservative treatment was recommended for his back pain, such as heat, medication, and exercise. (Tr. 297, 313, 330). At a routine medical exam on January 5, 2015, just days before he was laid off from work, Plaintiff reported no back-related complaints. (Tr. 254). At his next exam on December 14, 2015, Plaintiff's gait, cervical spine, and lumbar spine were normal and with only mild kyphosis and tenderness in the thoracic spine (Tr. 263). Other examinations continued to yield little to no restriction is evidenced by Plaintiff's normal gait, normal strength, and heel-toe walk (Tr. 303, 310, 319, 322). The medical record further reflects diagnoses of osteoporosis as early as 2013 and 2014, indicating that Plaintiff had osteoporosis when he underwent the CE in 2016. (Tr. 246, 251, 292, 300). Thus, the bone density test from May 2016 did not constitute new evidence.[3]

Furthermore, as the Commissioner correctly points out, the RFC is not limited to medical records; rather, an RFC determination is based on all of the relevant evidence. Liner v. Colvin, 815 F.3d 437, 438 (8th Cir. 2016). The record is replete with other evidence indicating that Plaintiff's symptoms are not as severe as alleged. For instance, Plaintiff testified he used a cane when he left the house (Tr. 36); however, there is no evidence in the record that a cane was medically necessary. In addition, Plaintiff worked at the library for five hours per day, four days per week. (Tr. 27, 29). Such part-time work further undermines Plaintiff's claims of disability. See e.g., Medhaug v. Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (working five days per week for four to six hours per

---

[3] Notably, Plaintiff repeatedly declined to schedule a bone scan, despite multiple reminders from his health care providers. (Tr. 299, 305, 307). His failure to comply with medical directives undermines his claims. See Cypress v. Colvin, 807 F.3d 948, 951 (8th Cir. 2015).

day as a bus driver undermined claimant's allegations). Lastly, although Plaintiff claims his condition was severe enough to prevent him from working in November 2012, he continued to work as a valve assembler, lifting 50 pounds or more, until he was laid off in 2015. (Tr. 155, 161, 168). Leaving work due to a lay off also weighs against credibility. See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Medhaug, 578 F.3d at 816-11 (affirming the denial of benefits where claimant left work due to being laid off).

In sum, there was sufficient evidence in this case that Plaintiff maintained the capacity to perform a range of medium work such that the ALJ made a proper determination based on the record as a whole.

**Severe impairment**

At step two of the sequential process, the ALJ must determine that the claimant has a severe mental or physical impairment that has or is expected to last twelve months or will result in death. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(i)-(ii); 416.909, 416.920(a)(4)(i)-(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007); 20 C.F.R §§ 404.1520(c), 416.920(c). Basic work activities mean the abilities and aptitudes necessary to do most jobs, including physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b); 416.921(b). The claimant bears the burden of establishing that his impairment is severe. Kirby, 500 F.3d at 707 (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000)). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." Id. at 708.

Plaintiff argues the ALJ erred in finding his osteoporosis was not a severe impairment given his 2016 diagnosis and Dr. Kohn's limitation of "Currently just weight-bearing activity." The Commissioner maintains there is no error because osteoporosis is not "separate and apart" from the other listed impairments of mid-thoracic compression fracture and degenerative disc disease that the ALJ considered. The Court agrees with the Commissioner. A failure to list a specific impairment at step two of the sequential evaluation process is not an error unless the impairment is "separate and apart" from the other listed impairments. See Gragg v. Astrue, 615 F.3d 932, 939 (8th Cir. 2010).

Moreover, even if the ALJ erred in excluding Plaintiff's osteoporosis from the list of severe impairments, the Court finds such error was harmless because the ALJ clearly considered all of Plaintiff's credible limitations throughout the RFC analysis. See Faint v. Colvin, 26 F. Supp. 3d 896, 910 (E.D. Mo. 2014) (ALJ's failure to find plaintiff's hearing condition to be a severe impairment was harmless given the ALJ's inclusion of the condition in his overall analysis); see also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."); DeGroot v. Berryhill, No. 1:17CV202 ACL, 2019 WL 1316964, at *7 (E.D. Mo. Mar. 22, 2019) (citing Coleman v. Astrue, No. 4:11CV2131 CDP, 2013 WL 665084, at *10 (E.D. Mo. Feb. 23, 2013) ("Where an ALJ errs by failing to find an impairment to be severe, such error is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the process.").

Here, the ALJ found that Plaintiff had postural limitations relating to his severe back impairments. (Tr. 13). While the record does not show that Plaintiff's osteoporosis was limiting, postural limitations would certainly address limitations associated with any pain and mobility issues stemming from osteoporosis. Thus, substantial evidence supports the step two finding.

**Vocational expert**

At step four of the disability process, the ALJ, with the assistance of a vocational expert ("VE") found that Plaintiff could perform his past relevant work as a valve assembler. (Tr. 15). The vocational expert (VE) testified that Plaintiff worked as a valve assembler as described in DOT 710.684-04, a light job in the national economy, but that Plaintiff performed it "at least at [the] medium" exertional level. (Tr. 49). The VE opined that an individual with Plaintiff's vocational profile who could perform a range of medium work could perform his past work of valve assembler both as he performed it and as it is performed in the national economy. (Tr. 50). The ALJ made the alternative finding at step five that there is other work in the national economy that Plaintiff could perform. (Id.).

Plaintiff raises a number of arguments regarding the ALJ's step four finding and the DOT job description in particular. First, he contends that if he were limited to light work, he would be found disabled by operation of the Medical-Vocational or "Grid" Rules. Having found that Plaintiff did not establish that he was limited to light work, the Court need not address this argument.

Next, Plaintiff argues there is a conflict between the VE's testimony and the DOT because his past work was more akin to a valve repairer than a valve technician. The Commissioner responds that it was not error for the VE to consider the various valve-related jobs in the DOT and land on the one that was closest to Plaintiff's work. DOT descriptions are generic and "offer the

approximate maximum requirements of a position—rather than their range," and are not requirements for all jobs in each category. <u>Welsh v. Colvin</u>, 765 F.3d 926, 929-30 (8th Cir. 2014) (internal citations omitted). Indeed, ALJs call upon a VE's experience, knowledge, and training to bridge the gap between the generic job descriptions of the DOT and the individualized RFC. The Court agrees with the Commissioner that substantial evidence on the record as a whole supports the ALJ's RFC determination.

## VI.    Conclusion

For all these reasons, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 1st day of April, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**